# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

_____

JOHN C. WEICHMAN, JR.,

               Plaintiff,

    v.                                          Case No. 09-CV-740

MILW. COUNTY SHERIFF DAVID A. CLARKE JR.,
MILWAUKEE COUNTY and JOHN DOES,

               Defendants.

_____

# ORDER

On July 29, 2009, the *pro se* plaintiff, John C. Weichman, Jr. ("Weichman"), filed a complaint alleging several different theories for relief related to his arrest and subsequent detainment in Milwaukee County Jail starting on March 4, 2009. (Docket #1). The case was randomly assigned to Chief Judge Clevert, who asked the parties to submit a report pursuant to Fed. R. Civ. P. 26 that would constitute the schedule for this litigation. (Docket #21). The report agreed to by the parties provided, in relevant part, a deadline of August 15, 2010, by which parties could submit dispositive motions. (Docket #25). On January 19, 2010, this matter was randomly reassigned to this branch of the court, with the schedule imposed by Chief Judge Clevert continuing to govern this matter. (Docket #36). Two days before the dispositive motion deadline, the defendants, David A. Clarke Jr. ("Clarke"), Milwaukee County ("Milwaukee County"), and unnamed "John Does," filed a motion for summary judgment. (Docket #13). The August 15, 2010 date for filing dispositive motions came and passed without a similar motion by the plaintiff. However, on

September 10, 2010, Mr. Weichman opted to file a motion labeled "notice of motion and motion for summary judgment." (Docket #55). The motion itself is difficult to understand, as it complains of the contents of the affidavits the defendant submitted with its August 13, 2010 motion for a page and a half (Docket #55 at 2-3), discusses the standards for bringing a motion to compel for another page, *id.* at 3-4, and closes with the peculiar declaration that "[f]or the foregoing reasons . . . plaintiff hereby moves this court for an Order granting Summary Judgment in favor of the plaintiff and the dismissal of all claims advanced by the defendants."[1] *Id.* at 5. Given that Mr. Weichman's motion for summary judgment in his favor was filed more than three weeks late, the defendants filed a motion to strike his summary judgment motion. (Docket #61). Not to be outdone, the plaintiff responded by filing a motion to strike the defendants' motion to strike on October 8, 2010. (Docket #62). Thankfully, to date, no party has filed "a motion to strike the motion to strike the motion to strike." Nonetheless, the docket in this matter is a bit of a mess, and the court begins this order by doing some much needed housekeeping of the docket before proceeding to resolve more substantive issues.

Fed. R. Civ. P. 6(b)(1) is clear: when an act may or must be done within a specified time – such as the dispositive motion deadline agreed to by the parties and approved by Chief Judge Clevert – the court can extend the time only if the movant demonstrates good cause. Fed. R. Civ. P. 6(b)(1)(B) adds another caveat for when

---

[1] The court notes that the defendants have not "advanced" any counterclaims in this matter.

a motion is made after the time to make such a motion has expired: the court can retroactively extend the deadline for when an act must be done by if the movant demonstrates excusable neglect. A court determines whether a party has failed to act because of "excusable neglect" by considering the relevant circumstances surrounding the party's omission. *Robb v. Norfolk & W. Ry. Co.,* 122 F.3d 354, 362 (7th Cir. 1997). The Supreme Court, in *Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership*, 507 U.S. 380, 395, 113 S. Ct. 1489, 123 L. Ed. 2d 74 (1993), provided a list of factors for a court to consider in evaluating whether "excusable neglect" exists, including "the danger of prejudice to the [defendant], the length of the delay and its potential impact on judicial proceedings, the reasons for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Id.* Here, the plaintiff has failed to provide any reason for why the motion for summary judgment was filed so late. This is especially remarkable given Mr. Weichman's earlier submissions to the court requesting an even earlier dispositive motion deadline of June 30, 2010. (Docket #18 at 6).

The plaintiff argues in his response to the defendants' motion to strike that the federal rules "allow 21 days for a response to be filed." (Pl.'s 10/08/10 Resp. Br. at 2). The court can only conclude that the plaintiff is utterly confused. The former manifestation of Fed. R. Civ. P. 56(c), which was effective until December 1, 2010, allowed a party opposing a motion for summary judgment to file a response within

21 days after the motion was served. Mr. Weichman was not filing a "response" with his docket entry at Docket #55; instead, he was filing a dispositive motion of his own to have the court grant summary judgment in his favor. The former Fed. R. Civ. P. 56(c) is irrelevant to his inquiry.[2] The rest of the plaintiff's response to the motion to strike is a series of *ad hominem* attacks on the defendants' counsel which this court will not dignify with a response. *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of the United States of Am. Inc.*, 700 F. Supp. 2d 1055, 1101 (E.D. Wis. 2010) ("inadequately developed arguments are deemed waived."). In short, the court will deny and strike Mr. Weichman's September 10, 2010 motion, strike his accompanying affidavit at Docket #56 and proposed findings of fact in favor of his motion for summary judgment at Docket #57, grant the defendants' motion to strike, and deny the plaintiff's motion to strike the defendants' motion to strike. The court proceeds to resolve the defendants' motion for summary judgment, beginning with a discussion of the undisputed facts in this case.

## UNDISPUTED FACTS

Before detailing the undisputed facts, the court notes the means by which the court arrived at the facts of the case. The plaintiff is proceeding *pro se* in this litigation, and, as is required when moving for summary judgment against a *pro se*

---

[2] As an aside, the former Fed. R. Civ. P. 56(c) allowed a court's local rules to trump the Federal Rule's commands, and this court allows a party opposing summary judgment to file a response within thirty days of the motion. Civil L.R. 56(b)(2). Of course, this is irrelevant given that: (1) the defendants are attempting to strike Mr. Weichman's motion for summary judgment, not his response brief; and (2) Fed. R. Civ. P. 56's sections regarding the timeline to respond to a motion for summary judgment have been omitted from the latest version of the rule.

litigant, the defendant provided Weichman with the text of Fed. R. Civ. P. 56(e) & (f) and Civil L.R. 56.1, 56.2 and 7.1.[3]  Additionally, defendants' motion for summary judgment informed the plaintiff that:

> Pursuant to Civil Local Rule 56.1, please be advised that any factual assertion set forth in the accompanying affidavits and proposed findings of fact will be accepted by the Court as true unless you submit your own affidavits or other admissible documentary evidence contradicting the factual assertions.

(Def. Mot. S.J. at 2).  The defendants filed proposed findings of fact, supported by admissible evidence, in support of its motion for summary judgment.  However, Mr. Weichman did not dispute the defendants' proposed findings of fact.  Instead, the plaintiff filed a series of proposed findings to support his own motion for summary judgment and an accompany affidavit, both of which the court has already struck from the docket.  However, even if the court very liberally construed Mr. Weichman's proposed findings of fact and his affidavit at Docket #56 as a means to contest the defendants'0 own findings, the plaintiff's submissions are in violation of both the federal and local rules.  Mr. Weichman's proposed findings do not cite to any "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits, or declarations, stipulations, admissions, interrogatory answers," as required by Fed. R. Civ. P. 56(c)(1)(A) and Civil L.R.

---

[3] Civil Local Rules 56.1, 56.2, and 7.1 were amended and renumbered on January 26, 2010, and now appear as Civil Local Rules 56(a), 56(b) and 7(a).  However, the substance of those rules did not change because of the 2010 amendments.  The court notes, however, that the motion for summary judgment was filed in August of 2010, and there is no reason why the defendants were referring to Civil L.R. 56.1, 56.2, and 7.1 in their motion.  However, the court finds any deficiency in the warnings provided to Mr. Weichman harmless.  *See Outlaw v. Newkirk*, 259 F.3d 833, 841 (7th Cir. 2001).

56(b)(2)(B) and (C).  Moreover, it is well-established that in ruling on a motion for summary judgment, the court can only consider evidence that would be admissible at trial. *See Woods v. City of Chicago*, 234 F.3d 979, 988 (7th Cir. 2000).  To be admissible, testimony must be sworn, for example, in an affidavit or in a deposition. If it is not, the Court must disregard it. *See Pfeil v. Rogers*, 757 F.2d 850, 859 (7th Cir. 1985).  "Affidavits are admissible in summary judgment proceedings if they are made under penalties of perjury; only unsworn documents purporting to be affidavits may be rejected." *Pfeil*, 757 F.2d at 859.  Here, Mr. Weichman seems to have presented only one piece of admissible evidence, an affidavit endorsed by a  notary public, in compliance with 28 U.S.C. § 1746.[4]  *See Pfeil*, 757 F.2d at 859.  However, the affidavit does not come close to contradicting the evidence presented by the defendants.  In fact, Mr. Weichman's affidavit merely complains in two paragraphs about the defendants' alleged "refusal to comply with the Discovery Process" (Weichman Aff. ¶¶ 2, 13), with the remainder of the affidavit devoted to Mr. Weichman's discussion of "Wisconsin Statute 345," *id.* ¶¶ 3-12, a discussion, that for reasons provided later in this order, is wholly tangential and irrelevant to the matter at hand.   In short, Mr. Weichman's affidavit and proposed findings do not come close to contesting the proposed findings of the defendants.  As a result, the

---

[4]  The court says "seems," as Fed. R. Civ. P. 56(c)(4) requires an "affidavit or declaration used to . . . oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."  Mr. Weichman's compliance with Rule 56(c)(4)'s requirements is very much in doubt, but the court need not reach that issue in this order.

court must accept as true any of the uncontradicted evidence provided by the defendants.

The court acknowledges that the plaintiff is proceeding *pro se*, but that fact alone does not excuse Mr. Weichman from submitting admissible evidence to oppose the motion for summary judgment. Indeed, "pro se litigants are not entitled to a general dispensation from the rules of procedure." *Jones v. Phipps*, 39 F.3d 158, 163 (7th Cir. 1994). The court has little sympathy for the plaintiff, as he was given: (1) a copy of the relevant local and federal rules with regarding to summary judgment motions; and (2) an explicit warning regarding the consequence if he failed to comply with the rules. Moreover, there is no reason to conclude that Mr. Weichman's errors were a result of a simple misunderstanding of the law. As the court noted in its May 25, 2010 order, the plaintiff has "shown that he is accustomed to the Federal Rules of Civil Procedure and is capable of performing legal research." (Docket #44 at 3). Additionally, Mr. Weichman's latest submissions to the court demonstrate that he is even aware of the need to provide admissible evidence to the court that indicates a genuine dispute as to an issue of fact. (Docket #56). The fact that Mr. Weichman chose not to submit an affidavit that genuinely opposed the evidence presented by the defendants is very telling.[5] In short, the defendants' proposed findings of fact are undisputed and accepted as true for the purposes of

---

[5] It appears to the court that Mr. Weichman is willing to attest to a notary his knowledge of the Wisconsin statutes, but is unwilling to support his other findings of fact with any sort of equivalent statement.

this motion. *See Runnels v. Armstrong World Industries, Inc.*, 105 F. Supp. 2d 914, 918 (C.D. Ill. 2000) ("because plaintiff has submitted no facts or evidence to contradict [the defendant's] version of events, [defendant's] facts are undisputed for purposes of this motion").

To provide context to the legal discussion that follows, the court provides a short summary of the facts as provided in the defendants' proposed findings of fact. On July 18, 2008, at about half past midnight, Mr. Weichman was involved in a one vehicle traffic accident on the 4100 block of W. Lisbon Avenue in the City of Milwaukee. (DPFF ¶ 7); *see also* Docket #52 Ex. B. Officer Jeffrey Waldorf ("Waldorf") of the City of Milwaukee's police department investigated the incident, and issued the plaintiff a citation for operating or driving a vehicle while under the influence of a controlled substance. (DPFF ¶ 8); *see also* Docket #52 Ex. A. The citation, a copy of which was served on Mr. Weichman "in person," required the plaintiff to appear in Milwaukee Circuit Court on February 11, 2009, at 1:00 p.m.[6] *Id.* A formal criminal complaint was prepared for "State of Wisconsin v. John C. Weichman, Jr., Milwaukee County Case Number 2009CT0230" and filed against the plaintiff alleging that "he operated a motor vehicle while under the influence of an intoxicant or other drug." (DPFF ¶ 11). The complaint noted that if convicted, this would be the third time Mr. Weichman had operated a motor vehicle while under the

---

[6] Mr. Weichman asserts repeatedly that the "citation" does not exist. (Pl.'s Resp. Br. at 3) ("Not only was such a citation never written or exists, Officer Waldorf has testified under oath as to this occurrence, which never transpired.") The record is clear that the plaintiff was provided a ticket, and Mr. Weichman's best impression of an ostrich will not negate that fact.

influence of drugs or alcohol. (Docket #52 Ex. B). Attached to the criminal complaint was a summons, requiring Mr. Weichman to appear at a hearing in Milwaukee County Circuit Court on February 11, 2009, at 1:00 p.m. (Docket #52 Ex. B). The summons and complaint were mailed to Mr. Weichman on January 2, 2009. (DPFF ¶11). Mr. Weichman, however, failed to attend the hearing scheduled for February 11, 2009. *Id.* As a consequence, Circuit Court Commissioner Rosa Barillas issued a bench warrant ordering the arrest of Mr. Weichman for his failure to attend the February 11, 2009 hearing. *Id.; see also* Docket #52 Ex. C. On March 4, 2009, the plaintiff was arrested and booked into the "County Correctional Facility-Central" ("CCF-C" or "Milwaukee County Jail"). DPFF ¶¶ 11-12.

The following day, at approximately 9:00 p.m., bail in the amount of $750.00 was posted for Mr. Weichman. (Docket #51 Ex. A). However, a condition of Mr. Weichman's release was that he, as an individual who had been identified because of his repeated struggles with alcohol abuse as a "high risk" "client," must participate in the Wisconsin Community Services' ("WCS") Repeat Intoxicated Driver Intervention Program. (DPFF ¶¶ 18-22). The WCS is a "nonprofit service agency that works with high risk individuals both inside and outside of the criminal justice system." (DPFF ¶ 2). However, because of the late hour in which Mr. Weichman's bond was posted, the process of having the plaintiff participate in the WCS program

was delayed,[7] ultimately with Mr. Weichman not being identified for release until 7:45 a.m. on March 9, 2009. (DPFF ¶ 25).

When the plaintiff arrived at the Milwaukee County Jail, pursuant to standard protocol, Mr. Weichman received medical treatment for alcohol dependence, acute alcohol withdrawal, opiate abuse, benzodiazepine abuse, and hypertension.[8] (DPFF ¶¶ 35, 44). Dr. Michael Grebner, M.D., the medical director of the Bureau of Detention Services of Milwaukee County, presents the unrebutted opinion that the treatment provided by the staff at the Milwaukee County Jail "met or exceeded the relevant standard of care." (Grebner Aff. ¶14). Dr. Grebner bases his opinion on his review of Weichman's medical records which include several relevant pieces of information. For example, Mr. Weichman, upon beginning his treatment, disclosed to medical staff at the jail that he had "undergone rotator cuff surgery" in January of 2009 and that he was taking: (1) "Alburterol and Combivent for chronic lung disease"; (2) opiates for pain; and (3) Alprazolam for anxiety. *Id.* Moreover, Mr. Weichman reported drinking alcohol on "a daily basis for more than a year and

---

[7] The defendants' proposed findings and brief goes into considerable detail regarding the process of releasing a repeat intoxicated driver on bail. In short, WCS staff "queries the Central Jail mainframe" every weekday morning to determine who has been ordered by the court to participate in the WCS treatment program. (DPFF ¶¶ 17-18). Upon identification of those individuals that need to participate in the program, WCS staff faxes a list of who will be "picked up" to the jail records staff, where, in turn, the jail records staff prepares the release paperwork and turns the inmate over to WCS staff. (DPFF ¶ 19).

[8] As a result, the evidence that supports the proposed findings regarding Mr. Weichman's medical treatment while incarcerated in the Milwaukee County Prison is not inadmissible under Fed. R. Evid. 802, as it is widely accepted that a medical expert can predicate his or her opinion on the recorded observations of staff members treating a patient. *See United States v. Bramlet*, 820 F.2d 851, 853 (7th Cir. 1987).

reported the amount consumed as 'as much as I can.'" (DPFF ¶ 36).   As a consequence of the medical staff's observations, the plaintiff was treated for prevention of complications of alcohol withdrawal, including being offered vitamins and being restricted to a lower bunk in the jail cell.  (DPFF ¶¶ 38, 44).  The medical staff obtained a release form and procured records from Mr. Weichman's pharmacy and hospital, confirming his use of Albuterol and Combivent inhalers.  (DPFF ¶ 39). However, contrary to Mr. Weichman's assertions, the plaintiff's medical records failed to indicate that the plaintiff:  (1) suffered from chronic respiratory problems; (2) had recently undergone surgery; or (3) needed other medications, such as to treat high blood pressure.  (DPFF ¶¶ 39, 44).  Most notably, Mr. Weichman reported that he was continuing to take opiates.  (DPFF ¶ 44).  Dr. Grebner, noting the "risks associated with abuse of opiates, alcohol and benzodiazepines, as well as the risks of opiate use within a jail setting," concluded that "Weichman should not receive opiates while incarcerated." *Id.* The plaintiff became quite upset upon being told he would not be allowed to receive narcotics while in jail, and Mr. Weichman refused a portable breathalyzer test.  (DPFF ¶¶ 37-38).   Mr. Weichman's complaints regarding his pain were not ignored, however, as the staff provided the plaintiff with Ibuprofen.  (DPFF ¶ 40).  Moreover, the medical staff monitored Mr. Weichman over the several days he was in the jail, noting elevated blood pressure.  (DPFF ¶ 40). As a result, Dr. Grebner prescribed hydrochlorothiazide 25 mg. daily for the next fourteen (14) days to treat Mr. Weichman's high blood pressure.  (DPFF ¶ 41).  The

plaintiff did not complete any written requests for healthcare services during his incarceration.  (DPFF ¶ 42).

Nearly five months after Mr. Weichman was released on bail following his participation in the WCS program, the plaintiff filed a complaint in this court against Milwaukee County Sheriff David A. Clarke Jr. ("Clarke") "in his official and individual capacities," "County of Milwaukee," and "John Doe's."  (Docket #1). The plaintiff generally alleges that he never received notice of the hearing for the "traffic ticket" and, therefore, should not have been arrested.  (Compl. ¶¶ 10-11).  Moreover, Mr. Weichman broadly asserts in his complaint that he was denied his medications while incarcerated and denied access to any medical personnel.  *Id.*  ¶¶ 17, 42, 51.  The plaintiff also boldly alleges that he was placed in a "holding area where he was required to remain seated, upright, hands at his side for a period of in excess of twenty four hours," and that cameras were following Mr. Weichman's behavior and being monitored by Sheriff Clarke at Clarke's home.  *Id.* ¶¶ 13, 26-27.  Finally, Mr. Weichman alleges that the defendants violated his individual rights by not releasing him until four days after his bail was paid.  *Id.* ¶ 18.  The plaintiff asks for $500,000 in compensatory damages and an addition $100,0000 in punitive damages.  *Id.* ¶ 23. Viewing the plaintiff's complaint in a very generous manner, Mr. Weichman's complaint asserts nine different claims against the defendants, including:  (1) due process violations by wrongfully "taking [the plaintiff] into custody and holding him there against his will" without any notice; (2) due process violations stemming from

not releasing the plaintiff after he paid his bail; (3) a Fourth Amendment violation by performing an illegal search of his property; (4) an equal protection violation by intending to "deny the plaintiff equal protection of laws [sic]"; (5) an Eighth Amendment violation of his right against cruel and unusual punishment stemming from his medical treatment in the Milwaukee County Jail; (6) a state law based false imprisonment claim; (7) a state law intentional infliction of emotional distress claim; (8) a state law negligence claim; and (9) a state law negligent infliction of emotional distress claim. (Docket #1).

Sheriff Clarke, in a sworn affidavit, states that he has never met Mr. Weichman and was not "personally involved in any decision relating to his medical care while at the Milwaukee County Jail."[9] (Clarke Aff. ¶ 3). Moreover, Sheriff Clarke similarly disclaims any role in the initial issuance of the traffic citation on July 18, 2008, or the issuance of the criminal complaint against Mr. Weichman. *Id.* ¶ 4. Finally, Sheriff Clarke states that he is not "able to watch inmate activity at the Jail from my home." *Id.* ¶ 5. According to the Sheriff, attempts to allow remote access to the Jail operations have never come to fruition. *Id.* The court proceeds to address the merits of the summary judgment motion.

---

[9] Mr. Weichman argues that the declarations provided by the defense counsel are "self serving statements" that should be disregarded. (Pl.'s Resp. Br. at 8). However, the fact that evidence is self-serving is a question of credibility and is not a reason for the court to reject the evidence. *See Berry v. Chi. Transit Auth.*, 618 F.3d 688, 691 (7th Cir. 2010).

## DISCUSSION

Summary judgment is appropriate where "the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In order to be a "genuine" issue, there must be more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. In deciding whether summary judgment should be granted, the court interprets all the facts in the "light most favorable to the nonmovant party." *Mobley v. Allstate Ins. Co.*, 531 F.3d 539, 545 (7th Cir. 2008). However, the party opposing the motion may not rely on "mere allegation or denials of his pleading," *Anderson*, 477 U.S. at 256, but instead must present genuine evidence of factual dispute. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). As the Seventh Circuit has famously said, "summary judgment is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Schacht v. Wisconsin Dep't of Corrections*, 175 F.3d 497, 504 (7th Cir. 1999). With these standards in mind, the court looks to whether

summary judgment is warranted regarding Mr. Weichman's slew of claims against the defendants.

However, before delving into whether there is any evidence supporting any of Mr. Weichman's claims from his complaint, the court must first determine who exactly are the defendants in this action. The plaintiff lists three defendants in his complaint. First, Mr. Weichman lists Sheriff Clarke as a defendant. (Compl. ¶ 4). Next, the plaintiff states that the "County of Milwaukee" is a defendant in this action. *Id.* ¶ 5. Lastly, the plaintiff lists "John Doe and others not presently known to Plaintiff" as defendants. *Id.* ¶ 6. The plaintiff has identified several individuals he suggests were responsible for the various acts he alleges harmed him, such as Officer Waldorf, (Docket #57 ¶ 8), and an assistant district attorney named Timothy J. Cotter, *id.* ¶ 11. Presumably, such people are the "John Does" that the plaintiff is referencing in his complaint. However, the plaintiff has failed to file any motion to amend or correct the caption, to amend his complaint, or to identify the John Does. The court notes that the Rule 26(f) plan that controlled the schedule in this matter contemplated having the plaintiff amend his complaint (Docket #25), but the plaintiff, despite the opportunities afforded him, chose not to amend his complaint. *Donald v. Cook County Sheriff's Dep't*, 95 F.3d 548, 555 (7th Cir. 1996) (holding that the court must allow for discovery and amendments to the pleading such that a pro se plaintiff can identify unnamed defendants). At the end of the day, the John Does are not suable parties, *see Gabby v. Maier*, No. 04-CV-0476, 2009 U.S. Dist. LEXIS

130086, at *45 (E.D. Wis. July 29, 2009), and the court will address the substantive claims as they relate to the two remaining defendants, Sheriff Clarke and Milwaukee County.

The plaintiff's first series of claims are all based on the remedy found in 42 U.S.C. § 1983. To recover under Section 1983, a plaintiff must show that: (1) he or she was deprived of a right secured by the Constitution or laws of the United States; and (2) the deprivation was visited upon them by a person or persons acting under color of state law. *McKinney v. Duplain,* 463 F.3d 679, 683 (7th Cir. 2006). Mr. Weichman first alleges he was deprived of his right to due process when he was illegally detained because of the issuance of an invalid citation and an invalid criminal complaint. The plaintiff provides no evidence for the court to doubt the validity of the citations and the criminal complaint proffered by the defendants. Mr. Weichman's bald assertions that cite to no evidence within the record are woefully insufficient to indicate that his arrest was not justified. *Albiero v. City of Kankakee*, 246 F.3d 927, 933 (7th Cir. 2001). Mr. Weichman dwells repeatedly in his brief to the court on the argument that the City of Milwaukee violated Wisconsin state law by not scheduling a court hearing regarding his traffic violation in a timely manner. (Pl.'s Br. at 3-5). The court takes no stance on whether Wisconsin state law was violated, as it is wholly irrelevant to the court's current inquiry. Mr. Weichman does not allege that the supposed violation of Wisconsin state law in this case was tantamount to a violation of due process or any other aspect of the Constitution, as

the initial hearing was scheduled less than six months after the criminal activity occurred. In order to prove a due process violation stemming from a delay that occurred before formal charges were filed against him, Mr. Weichman would have to proffer evidence that the delay in this case: (1) was purposely done by the government to gain a tactical advantage; and (2) caused the plaintiff actual and substantial prejudice. *United States v. Rein*, 848 F.2d 777, 781 (7th Cir. 1988). Mr. Weichman has not presented any evidence that even comes close to proving a due process violation. The mere violation of a state statute by a state actor cannot be the basis of a Section 1983 claim. *Ortega v. Ragen*, 216 F.2d 561, 562 (7th Cir. 1954) ("A cause of action arises under this section only when a right created by the Federal Constitution or laws has been violated. Violation of a state law is not sufficient.")

Additionally, Mr. Weichman's due process claim, premised on the argument that he should have been released immediately upon the posting of his bail money, is similarly unavailing. The record indicates that Mr. Weichman had abused alcohol and drugs repeatedly and was faced with his third violation of Wisconsin's laws against operating a motor vehicle while under the influence of drugs and alcohol. By imposing a condition on Mr. Weichman's bond that ensures a defendant is effectively supervised and treated pending a criminal trial, the state does not violate the plaintiff's rights. *See generally Faheem-El v. Klincar*, 841 F.2d 712 (7th Cir. 1988) (noting that a state has compelling interests, such as ensuring community

safety, in imposing bail and the conditions of release). Perhaps more importantly, the plaintiff has provided no evidence to indicate that Milwaukee County or Sheriff Clarke was somehow responsible for the initial citation, the criminal complaint, or the terms of his release on bail. Indeed, all of the relevant evidence indicates that none of the named defendants had anything to do with the due process violations Weichman alleges.

Mr. Weichman also asserts in his complaint that the defendants violated the plaintiff's individual rights by "making an unreasonable search and seizure of [the plaintiff's] property without due process of law." (Compl. ¶ 21(b)). However, the plaintiff fails to explain the basis for this allegation in any of his submissions to the court. The presumption is that prison officials enjoy considerable deference in running their institutions and that "it is difficult to conjure up too many real-life scenarios where prison strip searches of inmates could be said to be unreasonable under the Fourth Amendment." *Peckham v. Wisconsin Dep't of Corrections*, 141 F.3d 694, 697 (7th Cir. 1998). Here, the plaintiff has not presented any admissible evidence that would allow a reasonable jury to conclude that searches performed on Mr. Weichman while he was incarcerated were unreasonable.[10]

The plaintiff also alleges that the defendants "conspir[ed] for the purpose of impending and hindering the true course of justice, with the intent to deny plaintiff

---

[10] To the extent any of Mr. Weichman's claims are premised on the allegation that Sheriff Clarke has installed "cameras" to spy on prisoners at the Milwaukee County Jail (Compl. ¶ 27), the plaintiff has not presented any evidence to support such a claim.

equal protection of the law." (Compl. ¶ 21(c)). The court cannot fathom what Mr. Weichman's claim regarding a supposed equal protection violation even alludes to: incoherent ramblings and legal cliches do not amount to a viable legal claim. This claim should have been dismissed during the screening of Mr. Weichman's motion for leave to proceed *in forma pauperis.* (Docket #3). Nonetheless, under the federal *in forma pauperis* statute, once the court has authorized the commencement of a civil proceeding without prepayment of fees by a person who submits an affidavit attesting to their poverty, the court has the obligation to dismiss a claim if "at any time" the court determines that a claim is not one for "which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii). A complaint's request for relief must be "plausible on its face." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). A complaint meets this standard when the alleged facts "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "[N]aked assertions devoid of further factual enhancement," such as Mr. Weichman's claim that his equal protection rights were violated by the defendants, are insufficient. *Iqbal,* 129 S.Ct. at 1949. Accordingly, the court dismisses the plaintiff's Section 1983 claim based on a violation of the equal protection clause of the Fourteenth Amendment.[11]

---

[11] The Fifth Amendment's due process clause is not implicated by this matter as no federal actor is implicated by Mr. Weichman's complaint. *Bartkus v. Illinois*, 359 U.S. 121, 158-59, 3 L. Ed. 2d 684, 79 S. Ct. 676 (1959) (holding that the Fifth Amendment's due process provision only applies to actions taken by the federal government, not state or local governments).

Mr. Weichman's final federal claims are Section 1983 claims premised on violations of his right to be free from cruel and unusual punishment. Specifically, the plaintiff alleges the defendants violation his rights by: (1) detaining Mr. Weichman in a "holding area where he was required to remain seated, upright, hands at his side for a period in excess of twenty four hours" (Compl. ¶ 26); and (2) restricting the medications provided to Mr. Weichman while in jail. (Compl. ¶¶ 38(e) and (f), 41, 51). The Eighth Amendment as applied through the Fourteenth Amendment does not apply to pretrial detainees, but, as a pretrial detainee, the plaintiff was entitled "to at least the same protection against deliberate indifference to his basic needs as is available to convicted prisoners under the Eighth Amendment." *Cavalieri v. Shepard*, 321 F.3d 616, 620 (7th Cir. 2003). The plaintiff has the burden of showing that: (1) the harm to the plaintiff was objectively serious; and (2) that the officials involved were deliberately indifferent to the plaintiff's health or safety. *Id.* Here, the plaintiff has utterly failed to present any admissible evidence, let alone any evidence that creates an issue of fact as to whether the harm that Mr. Weichman endured was serious or whether the defendants acted with deliberate indifference toward the plaintiff. The defendants have presented unrebutted evidence that the level of care that Mr. Weichman was provided with was adequate. The court is obliged to dismiss the plaintiff's remaining federal claims.

Mr. Weichman's complaint raises a series of state law claims: (1) a state false imprisonment claim; (2) an intentional infliction of emotional distress claim; (3) a

medical malpractice claim; and (4) a negligent infliction of emotional distress claim. The only basis for the court to exercise jurisdiction over these remaining state law claims is the court's supplemental jurisdiction as provided by 28 U.S.C. § 1367(a). As a general rule, when all federal claims have been dismissed prior to trial and only pendant claims remain, "the federal court should relinquish jurisdiction over the remaining pendant state claims." *Williams v. Rodriguez*, 509 F.3d 392, 404 (7th Cir. 2007); *see also Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988) ("[I]n the usual case in which all federal law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine – judicial economy, convenience, fairness, and comity – will point toward declining to exercise jurisdiction over the remaining state-law claims") (citing *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966)). However, the court need not reach the issue, as Mr. Weichman's response brief to the court apparently voluntarily dismisses the state law claims. (Pl.'s Br. at 15-16) ("State law claims for false arrest, intentional infliction of emotional distress and negligent infliction of emotional distress . . . should be dismissed . . . There are no state law claims anywhere within this action"). Moreover, even if Mr. Weichman were still pursuing these state law claims, he has not presented any admissible evidence to support any his claims. The court will dismiss the remaining claims and dismiss this action with prejudice.

At the end of the day, all of the admissible evidence presented to the court indicates that Mr. Weichman was issued a citation that instructed him to appear in

court at a certain date and time. Mr. Weichman was also provided with a criminal complaint that told him to appear at the same time that was provided on his earlier traffic citation. The plaintiff opted to ignore his court dates, despite having two prior convictions for driving under the influence of drugs or alcohol in Wisconsin. Ultimately, there are consequences to such actions, including arrest and detainment under conditions set by the state. There is no evidence that Mr. Weichman has presented that he suffered any serious medical problems as a result of his detainment, and, similarly, there is no evidence that Mr. Weichman was treated improperly by the staff at the Milwaukee County Jail. Mr. Weichman's latest submissions to the court indicate that he simply does not want to accept the consequences of his poor decisions and instead would rather loft petty insults at the attorneys who represent the City of Milwaukee. Despite the plaintiff's bald allegations, he has not submitted any evidence that the attorneys for the City of Milwaukee acted improperly in their defense of their client. Moreover, Mr. Weichman repeatedly asserts that he was harmed in this action because of the court's decision to not appoint him counsel. Again, Mr. Weichman does not want to accept responsibility for his own failings. His submissions to this court indicate he is more than capable of engaging in discovery and performing legal research. However, when summary judgment time came in this matter, the plaintiff opted to ignore fairly basic rules that he needed to submit admissible evidence to this court to overcome summary judgment. Having ignored the warnings of opposing counsel, the court,

in the end, finds very little sympathy for Mr. Weichman's actions. This matter has not been prosecuted by the plaintiff with any level of seriousness and appears to have been pursued only if to harass the defendants. Given that "summary judgment is the 'put up or shut up' moment in a lawsuit," *Schacht*, 175 F.3d at 504, this court has no choice but to direct Mr. Weichman to take the latter course of action. This case is rightfully dismissed by this court.

Accordingly,

**IT IS ORDERED** that the defendants' motion to strike the plaintiff's motion for summary judgment (Docket #61) be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that plaintiff's motion for summary judgment (Docket #55) be and the same is hereby **DENIED** and **STRICKEN**;

**IT IS FURTHER ORDERED** that plaintiff's affidavit in support of his motion for summary judgment (Docket #56) be and the same is hereby **STRICKEN**;

**IT IS FURTHER ORDERED** that plaintiff's proposed findings of fact (Docket #57) be and the same is hereby **STRICKEN**;

**IT IS FURTHER ORDERED** that plaintiff's motion to strike the defendants' motion to strike (Docket #62) be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** the defendants' motion for summary judgment (Docket #53) be and the same is hereby **GRANTED**; and

**IT IS FURTHER ORDERED** that this matter be and the same is hereby **DISMISSED** with prejudice.

The clerk is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 15th day of February, 2011.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge